612 A.2d 458

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Geneva SPELLS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed July 1, 1992.

234

Bradley S. Bridge, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence imposed upon Spells after she was found guilty, following a non-jury trial with stipulated facts, of aggravated assault,[1] simple assault,[2] possession of an instrument of crime,[3] and reckless endangerment of another person.[4] Timely-filed post-verdict motions were denied by the trial court and Spells was sentenced to the mandatory minimum sentence of five years pursuant to 42 Pa.C.S. section 9712 (Purdon 1982 & Supp. 1991) (Sentences for offenses committed with firearms). We affirm.

The sole issue raised by Spells on appeal is as follows:

Is not a mandatory five year to ten year sentence of incarceration for aggravated assault unlawful, as it is unconstitutionally disproportionate and irrational when

1. 18 Pa.C.S. § 2702 (Purdon 1983 & Supp.1991).
2. 18 Pa.C.S. § 2701 (Purdon 1983).
3. 18 Pa.C.S. § 907 (Purdon 1983).
4. 18 Pa.C.S. § 2705 (Purdon 1983).

aggravated assault is a lesser included offense of attempt[ed] murder of the first degree, a crime for which there is no mandatory sentence?

Appellant's Brief at p. 2.

The facts, as stipulated to by the parties, were summarized by the trial court as follows:

On September 18, 1987, Geneva Spells purchased a gun in Dallas, Texas where she lived and flew to Philadelphia to shoot her estranged husband. (N.T., Preliminary Hearing, 10/28/87, pg. 14). Finding her husband at work she walked up to him and from a distance of one foot, pulled the trigger of the loaded gun pointed directly at his head. (N.T., Preliminary Hearing, pg. 6). The complainant avoided death because the gun had a very tight trigger which the defendant could not operate. (N.T., 11/6/89, p. 24–25; 5/24/90, pg. 3) [.] When the gun did not go off she repeatedly pulled the trigger to discharge the gun. (N.T., pg. 6, 15). Security guards took the weapon from the defendant and arrested her. That same day the defendant described the incident as follows: "I pointed it at him and pulled the trigger as hard as I could, but it did not go off. I kept pulling the trigger, and then he took it from me. I did this because of past problems over the past 21 years. The way I feel right now, I would do it again, and the next time I will take the time to do it more properly." (N.T., 10/28/87, pg. 15).

Trial Court Opinion at pp. 1–2.

While Spells' own admission indicates that she intended to kill her estranged husband by pointing a gun at his head and pulling the trigger, the Commonwealth did not charge Spells with criminal attempt murder. In her post-verdict motions, Spells argued to the trial court that it was error to consider the aggravated assault conviction as a first degree felony, because it is a lesser included offense of attempted murder, a second degree felony. Spells claimed it would be irrational, fundamentally unfair and arbitrary to grade a greater offense less severely than a lesser included offense; moreover, such a grading would violate several constitution-

al protections under the state and federal constitutions. The trial court agreed, ruling that any sentence in excess of ten years incarceration—the maximum sentence that may be imposed for the second degree felony of attempted murder—violated both the Pennsylvania and United States Constitutions. The trial court also found, however, no constitutional impediment to the application of the mandatory sentencing provisions of 42 Pa.C.S. section 9712. Spells again raised the latter issue in a timely-filed motion to modify sentence which was denied by the trial court. Hence, the issue is now before this Court on appeal.

■ Section 9712 provides, in pertinent part:

**§ 9712. Sentences for offenses committed with firearms**

(a) **Mandatory sentence.**—Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa. C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), *aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1)* (relating to aggravated assault) or kidnapping, *or who is convicted of attempt to commit any of these crimes,* shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S. § 9712(a) (emphasis added). A reading of the above section makes readily apparent that attempted murder is not included in the "attempt" crimes of section 9712.[5] Just as Spells successfully argued to the trial court that the

---

**5.** A specific intent to kill is necessary to support a conviction for attempted murder. An attempt to commit murder can only constitute an attempt to commit murder of the first degree, because both second and third degree murder are **unintended results** of a specific intent to commit **a felony or serious bodily harm,** not to kill. *See, generally, Commonwealth v. Griffin,* 310 Pa.Super. 39, 50, 456 A.2d 171, 177 (1983) (an attempt to commit second or third degree murder would seem to require proof that a defendant *intended* to perpetrate an *unintended* killing—which is logically impossible).

maximum sentence for aggravated assault must be limited by the maximum sentence of attempted murder (an allegedly greater offense),[6] she now argues it is constitutionally impermissible to impose a mandatory minimum sentence upon her for aggravated assault when attempted murder of the first degree (an allegedly greater offense) is not included in the list of crimes under section 9712, and is not, therefore, susceptible to receiving a mandatory minimum sentence. Spells concludes it is a violation of both her state and federal constitutional rights to sentence her to a mandatory minimum because, if convicted of a greater offense, she could receive any sentence as a minimum, including probation. For the reasons that follow, we are unpersuaded by Spells' argument and affirm her judgment of sentence.

We note again that Spells was only charged and convicted of aggravated assault. The essence of Spells' argument is that aggravated assault is a lesser included offense of attempted murder, a crime with which Spells was not charged. We need not address, therefore, this part of her argument. Assuming arguendo that aggravated assault is a lesser included offense of attempted murder, when only aggravated assault is charged it is considered in and of itself, because no offense within which it could be included or into which it may merge exists. *See Sutton v. Maryland,* 886 F.2d 708 (4th Cir.1989), *cert. denied,* 494 U.S. 1036, 110 S.Ct. 1493, 108 L.Ed.2d 628 (1990) (when only common law assault is charged, it stands alone and is not a lesser included offense because there is no other offense into which it may merge). Thus, we forgo a lesser included offense analysis. The issue becomes then whether the sentence she received for aggravated assault violates one or more of her state and federal constitutional rights. We shall discuss each alleged violation separately.

**6.** The propriety of the trial court's holding that it could not lawfully impose a sentence of more than ten years on the aggravated assault conviction is not properly before us. We do not, therefore, address this issue.

■ Spells first characterizes as cruel and unusual punishment her sentence of a mandatory minimum for the aggravated assault charge when the "more serious" crime of attempted murder has no minimum, so, theoretically, a defendant convicted of that charge could receive probation. We initially note that, contrary to Spells' contention, the guarantee against cruel punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution.[7] *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied sub nom. Zettlemoyer v. Pennsylvania*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g. denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452; *Commonwealth v. Strunk*, 400 Pa.Super. 25, 582 A.2d 1326 (1990), *alloc. denied*, 528 Pa. 630, 598 A.2d 283 (1991).

7. Spells relies on the Pennsylvania Supreme Court's recent decision in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), for the proposition that the Pennsylvania Constitution conveys protections at least as broad, if not broader, than those protected under the United States Constitution. This is an overly broad reading of *Edmunds*. *Edmunds* discussed the protections afforded citizens of this Commonwealth from unreasonable search and seizures independent of any federal guarantees. The Supreme Court did state that a Pennsylvania defendant asserting rights under the state constitution broader than those applicable under its federal counterpart must demonstrate how the text and history of the Pennsylvania provision supports this assertion. Spells has not provided any such analysis in the present case.

Finally, Spells' argument fairs no better under a separate analysis of the Pennsylvania Constitution. Employing such an analysis, Spells would need to prove that her sentence "shock[s] the moral conscience of the community," *Commonwealth v. Sourbeer*, 492 Pa. 17, 33, 422 A.2d 116, 123 (1980), and that the "most accurate indicators of 'societal standards of justice' are the enactments of the duly elected representatives in the legislature...." *Commonwealth v. Hill*, 379 Pa.Super. 34, 40, 549 A.2d 583, 586 (1988), *alloc. denied*, 521 Pa. 618, 557 A.2d 721 (1989) (citation omitted). Because Spells has not argued, apart from a "merger" claim, that the harshness of the penalty is disproportionate to the seriousness of the crime *with which she was charged*, we find it unnecessary to engage in a separate state constitutional analysis.

We also note that Spells' argument does not properly present a constitutional challenge on the basis of cruel and unusual punishment. Spells relies on the United States Supreme Court's decision in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), for the proposition that all sentences are to be proportionate to the crime of which a defendant is convicted. This proposition does not reflect the holding of *Solem* and misrepresents the current state of proportionality jurisprudence as contained within the Eighth Amendment to the Constitution. In *Solem,* a sharply divided court affirmed the decision of the circuit court. The circuit court had found that a life sentence without possibility of parole imposed under a recidivist statute upon a man, following a seventh felony conviction, was violative of the federal guarantees against cruel and unusual punishment. Justice Powell, in an opinion joined by four other justices, indicated three objective criteria which could be examined to determine if a sentence is proportional to the crime committed:

> In sum, a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.

*Solem,* 463 U.S. at 292, 103 S.Ct. at 3010.

Spells correctly identifies these three objective criteria. However, while she argues that the first two criteria are the most critical, Spells completely fails to apply the first criterion to the facts of her case, apart from one sentence in which she raises her "merger" claim. This omission is understandable in light of the fact that the mandatory minimum provision of section 9712 has been repeatedly attacked as violating different constitutional rights and yet has been repeatedly upheld. *See, e.g., Commonwealth v. Ehrsam,* 355 Pa.Super. 40, 512 A.2d 1199 (1986), *alloc. denied,* 515 Pa. 573, 527 A.2d 535 (1987), *cert. denied,* 493

U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 311 (1989) (section 9712 does not violate the prohibition against cruel and unusual punishment); *Commonwealth v. Irving,* 347 Pa.Super. 349, 500 A.2d 868 (1985) (Mandatory Minimum Sentencing Act is not violative of equal protection); *Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985), *aff'd. sub nom. Wright v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (section 9712 does not unconstitutionally deny substantive due process by requiring proof of visible possession of a weapon to be made by a preponderance of the evidence).

Instead of discussing all three of the objective criteria of *Solem,* Spells relies on the second one as if it were the exclusive test for determining cruel and usual punishment. Such an argument is clearly incorrect. In the recently decided *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the United States Supreme Court again considered the propriety of the proportionality test of *Solem.* In an opinion concurring in part and concurring in the judgment, Justice Kennedy, joined by Justices O'Connor and Souter, attempts to reconcile the Court's conflicting opinions on the subject. Justice Kennedy recognized that the Eighth Amendment's cruel and unusual punishment clause encompasses a narrow proportionality principle that applies to non-capital cases.[8] In reviewing earlier cases which discuss the proportionality element of cruel and

**8.** In a lead opinion in which only Chief Justice Rehnquist joined, Justice Scalia held that the Eighth Amendment to the United States Constitution did not contain a proportionality principle and, alternatively, that any such principle was applicable to the court's death penalty jurisprudence and not to criminal sentences in general. Justice Scalia would overrule *Solem.*

Although Justices Kennedy, O'Connor and Souter did not agree on overruling *Solem,* in all other respects the Kennedy opinion functions as a majority opinion, and constitutes a "joint opinion," similar to those in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). *See Sumner v. Shuman,* 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987) (treats *Gregg, Proffitt,* and *Jurek,* which were joint opinions, as precedent).

unusual punishment, Justice Kennedy discovered several common principles:

> The first of these principles is that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is "properly within the province of the legislatures, not courts." [*Rummel v. Estelle*, 445 U.S. 263, 275–76, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382, (1980)].... The efficacy of any sentencing system cannot be assessed absent agreement on the purposes and objectives of the penal system. And the responsibility for making these fundamental choices and implementing them lies with the legislature.... Thus, reviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. *Solem,* supra, [463 U.S.] at 290 [103 S.Ct. at 3009]....

> The second principle is that the Eighth Amendment does not mandate adoption of any one penological theory....

> Third, marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure....

> The fourth principle at work in our cases is that proportionality review by federal courts should be informed by " 'objective factors to the maximum possible extent.' " *Rummel,* supra, [445 U.S.] at 274–275, [100 S.Ct. at 1139], quoting *Coker* [*v. Georgia*] 433 U.S., [584] at 592 [97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977)] (plurality opinion). See also *Solem,* supra, [463 U.S.] at 290 [103 S.Ct. at 3009]. The most prominent objective factor is the type of punishment imposed.... By contrast, our decisions recognize that we lack clear objective standards to distinguish between sentences for different terms of years. *Rummel,* supra, [445 U.S.] at 275 [100 S.Ct. at 1140].... Although "no penalty [is per se constitutional," *Solem* [463 U.S.] at 290, 103 S.Ct. at 3009], the relative lack of

objective standards concerning terms of imprisonment has meant that " 'outside the context of capital punishment, successful challenges to the proportionality of particular sentences [are] exceedingly rare.' " *Id.,* at 289–290, [103 S.Ct. at 3008–3009], quoting *Rummel,* supra, [445 U.S.] at 272 [100 S.Ct. at 1138].

All of these principles—the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors—inform the final one: the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime. *Solem,* supra, [463 U.S.] at 288, 303 [103 S.Ct. at 3008–3016].

*Harmelin,* 111 S.Ct. at 2703–2704.

Interpreting the three objective factors established by Justice Powell in *Solem,* Justice Kennedy found that *Solem* did not establish a rigid three-part test. While recognizing *Solem*'s holding that, in determining unconstitutional disproportionality, no one factor will be dispositive in a given case, *Solem,* 463 U.S. at 291, n. 17, 103 S.Ct. at 3010, n. 17, Justice Kennedy opined that one factor may nevertheless determine the constitutionality of a particular sentence:

Solem is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. The Court stated that "it may be helpful to compare sentences imposed on other criminals in the same jurisdiction," and that "courts find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." *Id.,* at 291–92 [103 S.Ct. at 3010–3011].... It did not mandate such inquiries.

A better reading of our cases leads to the conclusion that intra- and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality....

> The proper rule for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.

*Harmelin*, 111 S.Ct. at 2706–2707.[9] Justice Kennedy then concluded that, due to the serious nature of Harmelin's crime, i.e., possession of more than 650 grams of cocaine, no such comparative analysis was needed.[10]

■ The seriousness of the crime with which Spells was convicted cannot be questioned. As stated above, a mandatory five year minimum sentence for offenses committed with firearms has repeatedly withstood constitutional challenge. Under the *Harmelin* standard, a comparative analysis is not needed. Therefore, the fact that the "more serious" crime of attempted murder does not likewise carry a mandatory minimum becomes irrelevant.[11] Accordingly, under the current status of the proportionality principle in regard to the constitutional protection against cruel and unusual punishment—a protection coextensive with protections provided by our state constitution—Spells mandatory

**9.** Justice Kennedy's comments were in response to the contention that the federal proportionality decisions require a comparative analysis among the sentence at issue, sentences imposed for other crimes in Michigan and sentences imposed for the same crime in other jurisdictions.

**10.** Justice Kennedy finds even less discretion in reviewing a sentence for proportionality when a mandatory sentence is involved: To "set aside petitioner's mandatory sentence would require rejection not of the judgment of a single jurist, as in *Solem,* but rather the collective wisdom of the Michigan Legislature and, as a consequence, the Michigan citizenry." *Harmelin,* 111 S.Ct. at 2708.

**11.** In a dissent joined by Justices Blackman and Stevens in *Harmelin,* Justice White states that the proportionality analysis proposed by Justice Kennedy eviscerates *Solem* by reducing its three objective factors to one factor which is quite subjective. Justice White reiterated the statements in *Solem* that "no one factor will be dispositive of a given case," and "no single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment," "but a combination of objective factors can make such an analysis possible." *Solem,* 463 U.S. at 291, n. 17, 103 S.Ct. at 3010, n. 17.

Spells would fair no better under this analysis. As stated above, Spells has presented no argument to this Court, apart from the lesser included analysis which is not presently before us, that would indicate that her sentence is too harsh given the gravity of the offense she committed.

sentence of five years does not constitute a cruel and unusual punishment under either constitution. Her claim to the contrary is, therefore, without merit.

Spells also claims her sentence violates the due process and equal protection rights afforded the citizenry of Pennsylvania by both the state constitution and its federal counterpart. We will briefly discuss and dispose of each claim separately.

 Once again, we note that section 9712 has withstood constitutional challenge on equal protection grounds. *Commonwealth v. Irving, supra.* Insofar as Spells alleges an equal protection violation because the "more serious" crime of attempted murder is not included within the "attempt" variety of crimes listed in section 9712 and, therefore, has no mandatory minimum, we are not persuaded. The fact that the legislature may create different penalties for similar kinds of criminal conduct, leaving application of the penalties to the prosecutor's discretion, creates no classification at all, and does not, therefore, raise an equal protection issue. *Commonwealth v. Parker White Metal Co.,* 512 Pa. 74, 515 A.2d 1358 (1986). Moreover, the fact that an attempted murder committed with a firearm is not included within section 9712, while seemingly illogical, is of no consequence.[12] As this Court has stated, "This argument fails because the equal protection clause does not force the legislature to choose between attacking all aspects of a problem or not at all." *Commonwealth v. Hoover,* 343 Pa.Super. 372, 376, 494 A.2d 1131, 1134 (1985) (citing *Dan-*

---

12. One can reasonably conclude that the completed crimes of first and second degree murder were not included in the list of crimes to which section 9712(a) applies because a mandatory term of life imprisonment represents the "minimum" mandated by statute. Because these completed crimes were not listed necessarily means that an attempted murder is likewise excluded. While we conclude that such a result follows logically, we cannot find such a disparagement of treatment to take on constitutional significance. The facts of the present case include the visible use of a firearm; clearly, but for this legislative omission, section 9712 would be applicable under the facts of this case. Surely, an argument cannot be made that an attempted murder by use of a firearm should be treated differently than other crimes committed with firearms.

*dridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)). Spells' equal protection challenge is without merit.

Lastly, Spells challenges her sentence on both state and federal due process grounds. According to this argument, delegating authority and power to the district attorney to subject a defendant to a mandatory minimum by charging her with aggravated assault, when the "greater" crime of attempted murder carries no such mandatory minimum, is a deprivation of the due process rights afforded Spells by both the state and federal constitutions. In essence, Spells claims that "[the Commonwealth's] constitutional obligation to prove the commission of offenses beyond a reasonable doubt is fatally eviscerated if the Commonwealth can chose to prove less and be rewarded by obtaining more—here a mandatory sentence." Spells' Brief at p. 22. We are not persuaded.

The charging function is totally discretionary with the district attorney, both initially and as to which charges to pursue. *U.S. v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Commonwealth v. Eisemann,* 276 Pa.Super. 543, 419 A.2d 591 (1980). The fact that section 9712 vests the prosecutor with the discretion to determine when the mandatory sentencing provisions will apply does not violate the doctrine of due process of law. *Commonwealth v. Michael,* 352 Pa.Super. 345, 507 A.2d 1263 (1986). Spells' final constitutional challenge is likewise meritless.

Judgment of sentence affirmed.

WIEAND, J., files a concurring opinion in which BECK, J., joins.

WIEAND, Judge, concurring.

I concur in the decision to affirm the judgment of sentence. I am unable to conclude that appellant's sentence in this case was so disproportionate to her crime that it constituted cruel and unusual punishment. Nevertheless, I feel constrained to observe that it strains both logic and reason to impose a more serious penalty for aggravated

assault than for attempted murder. This is what motivated the Commonwealth to charge appellant with aggravated assault rather than attempted murder, despite the fact that appellant's intent to kill her estranged husband could not have been more clearly demonstrated. In my judgment, aggravated assault is a lesser included offense of attempted murder, see: *Commonwealth v. Anderson*, 416 Pa.Super. 203, 610 A.2d 1042 (1992) (en banc) (Wieand, J., Dissenting); and, therefore, it should not carry a more severe penalty than attempted murder.

I am also unable to discern the legislature's logic in imposing a mandatory minimum sentence for visibly possessing a firearm during the commission of an aggravated assault, while not imposing a mandatory minimum sentence for the visible possession of a firearm during an attempted murder.

Perhaps it would be advisable for the legislature to reevaluate the grading scheme for the offenses of aggravated assault and attempted murder, as well as the exclusion of attempted murder from the purview of the mandatory minimum sentencing provisions.

BECK, J., joins in this concurring opinion.