OPINION BY
LAZARUS, J.:
Tyler Lankford appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction of multiple offenses stemming from four armed robberies. After careful review, we affirm.
Lankford was charged with five counts of • robbery, ■ 18 Pa.C.S.A. § 3701(a)(1)® and (ii), and related' offenses [1] for crimes committed on January 17, 2015. On June 8, 2015, Lankford filed a request for. a mental health 'evaluation, which the trial court granted.' However, at a plea hearing on August 11,2015, the trial court discovered Lankford received a competency evaluation conducted for Allegheny County, rather than the previously requested mental health evaluation. The trial court subsequently deemed Lankford competent to stand trial, but acknowledged an indication of serious substance abuse and the need for a full mental health evalua: tion.[2] Lankford did not. contest the trial court’s competency ruling,[3] and on August 11, 2015, he pleaded guilty to all charges.
On December 21, 2015, Lankford again filed a motion requesting a mental health evaluation. The trial court granted his motion, and Dr. Alice E. Applegate, forensic psychologist, conducted Lankford’s evaluation. On March 10, 2016, Lankford submitted to the trial court a memorandum in aid of sentencing, which included Dr. Apple-gate’s' report detailing his mental health evaluation.[4]
*1252 On April 5, 2016, the trial court sentenced Lankford to an aggregate term of 99 to 220 months’ imprisonment, followed by three yéars of state probation. At his sentencing hearing, Dr. ■ Applegate explained that Lankford was seriously mentally ill, exhibited suicidal thoughts and cognitive confusion and noted that schizophrenia ran in the paternal side of Lank-ford’s family. In fashioning Lankford’s sentence, the trial court considered his Presentence Investigation Report (PSI), his memorandum in aid of sentencing and testimony from his stepfather, mother and maternal grandparents.
Lankford filed a motion for reconsideration of sentence, which the trial court denied without a hearing. Lankford filed a timely appeal, followed by a P&R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Lankford raises the following issue for our review:
Did the trial court impose a cruel and unusual punishment when it sentenced [Lankford] to 99 to 220 [months’ incarceration] despite his severe and untreated mental health problems?
Brief of Appellant, at 11.
Lankford claims he is entitled to mental health treatment and that the denial of such treatment is cruel and unusual punishment, and therefore unconstitutional.[5] We disagree.
Article 1, Section 13 of the Pennsylvania Constitution provides “[ejxcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.” P.A. Const, art. I, § 13. “[T]he guarantee against cruel punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution.” Commonwealth v. Spells, 417 Pa.Super. 233, 612 A.2d 458, 461 (1992). The Eighth Amendment does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are grossly disproportionate to the crime. See Commonwealth v. Hall, 549 Pa. 269, 701 A.2d 190, 209 (1997) (citing Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)) (emphasis added).
In Commonwealth v. Spells, 417 Pa.Super. 233, 612 A.2d 458, 462 (1992) (en banc), this Court applied the three-prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983):
[A] court’s proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
Spells, 612 A.2d at 462 (quoting Solem, 463 U.S. at 292, 103 S.Ct. 3001). However, this Court is not obligated to reach the second and third prongs of the Spells test unless “a threshold comparison of the crime committed and the sentence imposed *1253 leads to an inference of gross dispropor-tionality.” Spells, supra at 463 (citation omitted).
In Spells, appellant argued the first two Solem criteria are the most critical, but completely failed to apply the first criterion to the facts of the case. Instead, appellant incorrectly relied on the second criterion put forth in Solem as if it were the exclusive test for determining what constitutes cruel and unusual punishment.- See Harmelin v. Michigan, 501 U.S. 957, 1019, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (no single criterion can identify when sentence is so grossly disproportionate that it violates Eighth Amendment). Ultimately, the appellant in Spells failed to show that her sentence led to an inference of gross disproportionality, and thus, this Court did not proceed with a comparative analysis pursuant to the second and third Solem criteria.
Here, the trial court found that Lankford, like the appellant in Spells, failed - to satisfy the first prong of the Spells test. We agree. Given the seriousness of Lankford’s offenses, the potential for recidivism and the impact on the victims, Lankford’s sentence is not grossly disproportionate to the crime, and thus, does not violate prohibitions against cruel and unusual punishment.
Lankford’s claim that his sentence is grossly disproportionate to the crimes committed rests on the assertion that “no one suffered physical injury and no gun was fired in any of the criminal incidents.” Brief of Appellant, at 35. However, Lank-ford concedes that “the three prison sentences of two to four [years’ incarceration] and the [sentence] of 27 to 76 [months’ incarceration] were all individually at or around the standard range.” Id. Whether or not Lankford discharged his weapon or the victims suffered physical injury is not, as Lankford argues, dispositive of the dis-proportionality of his sentence. See Harmelin, 501 U.S. at 978, 111 S.Ct. 2680 (what is cruel and unusual punishment is to be determined without reference to particular offense). The facts of this case do not support any inference that Lankford’s sentence is grossly disproportionate to the crime. Therefore, it is not necessary to proceed with ah analysis of the second and third prongs of the Spells test.[6] See Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (“The proper role for comparative analysis of sentences!, i.e., prongs two and three,] then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.”) (emphasis added).
Furthermore, despite Lankford’s apparent contention that a threshold comparison of the crimes he committed and his sentence leads to an inference of gross disproportionality—theoretically satisfying the first prong of the Spells test—he has hot presented an intra- or inter-jurisdictional comparative analysis of his sentence that the second and third prongs of the Spells test demand.’ See Spells, 612 A.2d at 458 (intra- and inter-jurisdictional anal-yses appropriate only in rare case in which threshold comparison of crime committed and sentence imposed leads to inference of gross disproportionality). Even so, such comparisons would not necessarily have warranted Lankford relief, as the Eighth Amendment, and thus, the Pennsylvania Constitution, which , contains no broader protection, contains no proportionality guarantee. See Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680.
Lankford also claims that the denial of mental health treatment, or access to men *1254 tal health treatment, constitutes cruel and unusual punishment. Lankford’s argument is unavailing. In Commonwealth v. Carr, 375 Pa.Super. 168, 543 A.2d 1232 (1988), the defendant argued- his sentence was unconstitutional “because the trial court rejected an alternative probationary-scheme proposed by [Carr] which [he] argued would have protected the . community while better accommodating [his] special mental health needs.” Carr, 543 A.2d at 1235. This Court rejected that argument, finding that Carr had not established that the mental health services available to him in the Pennsylvania prison system could not meet his alleged special mental health needs. Id.
In Carr, we also held that a sentence is not cruel and unusual punishment simply because a lesser sentence, e.g., Carr’s proposed alternative probationary scheme, might better accommodate a defendants special mental, health needs. There, we emphasized, that a “ ‘least restrictive means’Htype analysis ... has no place in the review of cruel and unusual punishment claims.” Carr., 543 A.2d at 1234-35.
Similarly, Lankford avers a lesser or alternative sentence would enable him to seek rehabilitative mental health treatment. However, like in Carr, there are no indicia in the record that the trial court or Pennsylvania Department of Corrections (DOC) deprived. Lankford of access to mental health care or that his sentence would uniquely inhibit his access- to mental health care. See Head v. Pa. Bd. of Probation and Parole, 77 Pa.Cmwlth. 61, 465 A.2d 76 (1983) (where record contains no evidence indicating medical services and treatment available at or through state correctional institution are inadequate for defendant’s condition, or that such services would be , unjustifiably withheld, no factual basis exists to support defendant’s argument).
In Pennsylvania, when an inmate enters a facility operated by the DOC, that inmate immediately undergoes a physical and mental health screening, which the DOC uses to create an individualized correctional plan[7]. The DOC must, also establish procedures that permit inmates access to mental health care, and the DOC may not charge a fee to an inmate for mental health treatment. See 37 Pa. Code §§ 93.12(a) and (d). Recently, the DOC has made significant progress towards improving inmate access to mental healthcare.[8] These facts contradict Lankford’s asser *1255 tion that “only one-third of state prisoners with mental health problems actually receive proper treatment while incarcerated.” [9] Brief of Appellant, at 30. See Head v. Pa. Bd. of Probation and Parole, supra.
Accordingly, we find Lankford’s sentence is not unconstitutionally cruel and unusual punishment. Spells, supra. We note, too, that this Court’s decision is without prejudice to Lankford’s right to pursue relief in the DOC.
Judgment of sentence affirmed. .
DUBOW, J., Joins this opinion.
STRASSBURGER, J., Concurs in the result.

. Lankford was also charged with four counts of carrying a firearm without a license, 18 Pa.C.S.A. § 6106, four counts of recklessly endangering another person, 18 Pa.C.S.A. § 2705, four counts of theft, 18 Pa.C.S.A. § 3921(a), one count of carrying a loaded weapon, 18 Pa.C.S.A. 6106.1, and one count of simple assault, 18 Pa.C.S.A. §-2701(a)(3), for crimes committed on January'17, 2015.

. Lankford’s competency evaluation was conducted by Dr. Christine A. Martone. Dr. Mar-tone’s report raised concerns about malingering, i.e., exaggerating symptoms of mental illness,

. We note Lankford has waived the issue of competency on appeal, as he made no objections during his pre-trial competency hearing. See Commonwealth v. Bomar, 629 Pa, 136, 104 A.3d 1179 (2014) (appellant waived for post-conviction review argument that expert’s competency evaluation failed to establish competency at time of trial, where appellant ' failed to object to expert’s testimony at pretrial competency hearing).

. Specifically, Dr. Applegate diagnosed Lank-ford with provisional schizoaffective disorder, *1252 dissociative disorder, major depression, psychoactive substance abuse, adjustment disorder with anxiety and schizoid personality disorder with depressive traits and borderline, antisocial features. Memorandum in Aid of Sentencing, 3/16/16, at 3-4.

. We note that a claim that a sentence constitutes cruel and unusual punishment raises a question of the legality of the sentence, rather than the discretionary aspects of a sentence, and an appellant may raise legality of sentencing claims for the first time on direct appeal. See Commonwealth v. Brown, 71 A.3d 1009, 1016 (Pa. Super. 2013).

. Lankford relies on the second prong of the Spells test, arguing his mental illness warrants the court treat him as an individual with a "diminished capacity,” according to the evolving standards of decency referenced in Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Appellant’s Brief, at 28.

. See Disability Rights Network of Pa., Disability-Related Inquiries Concerning Individuals Incarcerated in Prison, (Aug. 2011), www.disabilityrightspa.org/wp-contenl/ uploads/2014/05/081 l_Disability-Realted_ Inquiries_Concerning_Individuals_ Incarcerated_in_Prisons.pdf. (April 27, 2017).

. In 2016, the United States Department of Justice noted several critical changes and reforms to the DOC’s mental health care services:
1.Solitary Confinement and Discipline. The Pennsylvania DOC created specialized treatment units for offenders with serious mental illness and intellectual disabilities. Problems are resolved informally or with mental, health staff[,] and discipline is no longer permitted for self-injurious behavior.
2. Out-of-Cell Options. Inmates with mental illness or intellectual disabilities are offered at least 20 hours per week out- ■ of-cell time for activities and treatment. Treatment units are less stark, featuring colorful murals and recovery-based messages, resulting in greater participation and fewer incidents of harm.
3. Mental Health Diagnosis and Classification. The classification process has been expanded to include all prisoners with a current or past diagnosis, protecting them from restrictive housing.
4. Mental Health Care Delivery. By designating certain facilities to specialize in the treatment for prisoners with mental illness or intellectual disabilities, offenders can benefit from expanded, treatment services and mental health personnel.
*1255 5. Training. The [DOC] has trained hundreds of corrections officers and more than 500 peer specialists (inmates) to reinforce the efforts of mental health staff and to support prisoners in need of treatment and suicide prevention.
Letter from Vanita Gupta, Principal Deputy Assistant Attorney General, and David J. Hickton, United States Attorney, Western District of Pennsylvania, to Tom Wolf, Governor of Pennsylvania (on file with recipient), available at https://www.justice.gov/cri/file/850886/ down load (last modified April 14, 2016).

. Lankford’s critique of state prison systems cites a law review article written in 2010. See Shane Levesque, Closing the Door. Mental Illness, the Criminal Justice System and the Need for a Uniform Mental Health Policy, 34 Nova L.Rev. 711, 721 (Summer 2010). We note that since 2014, the DOC has made significant progress in improving inmate access to mental health care. See Letter from Vanita Gupta, supra at n.7.