J-S44045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAWN C. CONKLIN | : | |
| | : | |
| Appellant | : | No. 562 MDA 2020 |

Appeal from the PCRA Order Entered February 24, 2020
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s):  CP-66-CR-0000472-2015

BEFORE:  BENDER, P.J.E., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED OCTOBER 28, 2020**

Shawn C. Conklin (Appellant) appeals, *pro* se, from the order entered in the Wyoming County Court of Common Pleas denying his petition filed pursuant to the Post Conviction Relief Act[1] (PCRA), seeking collateral relief from his plea of guilty, but mentally ill, to one count of attempted murder (third degree) and two counts of aggravated assault.[2]  On appeal, Appellant challenges (1) the PCRA court's decision to grant PCRA counsel's motion to withdraw from representation without a hearing; (2) law enforcement's failure to administer a blood test to him upon his arrest; and (3) plea counsel's ineffectiveness for advising him he would be sentenced to a term of 15 to 30 years' imprisonment.  Because we conclude Appellant is entitled to relief on

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. §§ 901(a), 2502(c), 2702(a)(1).

an issue we raise *sua sponte* — an improper plea to attempted third-degree murder, a crime that is not cognizable — we are constrained to reverse the order denying PCRA relief, vacate the judgment of sentence, vacate Appellant's guilty plea, and remand for further proceedings.

The relevant facts and procedural history underlying this appeal are as follows. On April 18, 2015, Appellant was arrested after he repeatedly stabbed three people, including his wife, with a pocket knife. All three victims survived. Appellant was later charged with multiple counts of attempted murder,[3] aggravated assault, and simple assault.[4] Following two mental health evaluations, Appellant was found to be competent to stand trial. Trial Ct. Op., 2/9/18, at 5. Thereafter, on January 8, 2016, Appellant entered a plea of guilty, but mentally ill, to one count of "attempted murder of the third degree," and two counts of aggravated assault. *See* N.T., 1/8/16, at 11. He was sentenced on February 10, 2016, to an aggregate term of 360 to 720 months' imprisonment.[5]

---

[3] Specifically, Appellant was charged with three counts each of "Criminal Attempt/Murder Third Degree," "Criminal Attempt/Criminal Homicide," and "Criminal Attempt/Voluntary Manslaughter." Appellant's Information, 1/7/16, at 1.

[4] 18 Pa.C.S. § 2701(a)(1).

[5] The court imposed a sentence of 240 to 480 months' imprisonment for attempted murder of the third degree, and consecutive terms of 60 to 120 months' imprisonment for each count of aggravated assault. Each sentence was imposed within the standard range of the sentencing guidelines. *See* Guideline Sentence Forms, 2/10/16 (standard range for attempted murder is

Counsel filed a timely motion for reconsideration of sentence, which the trial court denied on March 4, 2016. While that motion was pending, Appellant sent a letter to the court, *pro se*, "inform[ing] the courts that [he] would like an appeal" and stating that he "informed [his] attorney" of that fact. Letter, 2/24/16. The docket indicates the letter was forwarded to counsel that same day. Docket Entry, 2/24/16. Nevertheless, no direct appeal was filed after the court denied Appellant's post-sentence motion.

We review the protracted procedural history in detail. On June 28, 2016, Appellant filed a timely, *pro se* PCRA petition, alleging (1) counsel never filed an appeal, (2) the trial court sentenced him outside the guidelines, and (3) the trial court failed to consider his guilty, but mentally ill, plea at sentencing. *See* Appellant's Motion for Post-Conviction Collateral Relief, 6/28/16, at 7. Counsel was appointed, and sought an extension of time to amend the petition, which the PCRA court granted on October 20, 2016. However, counsel never filed an amended petition; rather, on July 25, 2017,[6] the court conducted a hearing, at which time, the parties entered a stipulation that

90 to 240 months, and standard range for aggravated assault is 54 to 72 months).

[6] We note the transcript for the hearing is dated August 25, 2017. However, the court's order disposing of the matter following the hearing was entered on August **17th**. Further, in its February 9, 2018, opinion, the court states the PCRA hearing was conducted on **July** 25, 2017. *See* Trial Ct. Op., 2/9/18, at 7 n.1. Thus, we presume the August 25th date was a typographical error.

Appellant was entitled to a new sentencing hearing.[7]  Thereafter, on August 17th, the PCRA court entered an order granting Appellant relief.  The order stated: "[U]pon agreement of Counsel, the Court finds that [Appellant] requested his Counsel enter an Appeal . . . and attempt[ed] to file an Appeal, which was denied due to [Appellant] being represented by Counsel[.]"  Order, 8/17/17.  The order also scheduled the matter for resentencing "upon completion of [a] supplemental Mental Health Evaluation" of Appellant.  *Id.*

The court conducted a resentencing hearing on November 16, 2017.  After hearing testimony from a forensic psychologist, and upon the agreement of counsel, the trial court determined Appellant was "severely mentally disabled and [ ] in need of treatment pursuant to the Mental Health Procedures Act."  N.T., 11/16/17, at 39.  The court then imposed the same sentence as it had in 2016.  Appellant filed a timely direct appeal, and this Court affirmed the judgment of sentence on October 10, 2018.  *See Commonwealth v. Conklin*, 1979 MDA 2017 (unpub. memo.) (Pa. Super. 2018).

---

[7] Pursuant to Section 9727(a) of Pennsylvania's Sentencing Code, before imposing a sentence following a plea of guilty but mentally ill, a court must "hear testimony and make a finding on the issue of whether the defendant at the time of sentencing is severely mentally disabled and in need of treatment pursuant to . . . the Mental Health Procedures Act."  42 Pa.C.S. § 9727(a) (internal punctuation omitted).  *See also* Mental Health Procedures Act, 50 P.S. §§ 7101-7503.  It is undisputed that the trial court did not hear testimony or make the required findings before sentencing Appellant on February 10, 2016.

On January 17, 2019, Appellant filed the present PCRA petition, *pro se*, and Robert Buttner, Esquire, was appointed as counsel. On January 21, 2020, Attorney Buttner filed a petition to withdraw and a **Turner**/**Finley**[8] "no merit" letter. On January 23rd, the PCRA court issued a rule returnable scheduling a hearing on counsel's motion to withdraw for March 6, 2020. Order, 1/23/20. However, a week later, on January 31st, the court entered another order, granting the motion to withdraw and striking the rule returnable hearing. Order, 1/31/20. The docket indicates the January 31st order was mailed to Attorney Buttner and the Commonwealth on February 4, 2020.[9] The court then entered another order on February 24, 2020, that purported to deny *pro se* correspondence from Appellant, which the court interpreted as a motion for new counsel. **See** Order, 2/24/20. The order also stated Appellant "shall have thirty (30) days from the date of this Order to file a direct appeal to the Pennsylvania Superior Court." **Id.** Upon our review of the record, we are unable to determine what "*pro se* correspondence" the court referenced.

_____

[8] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[9] The court did not mail the order directly to Appellant. Indeed, Appellant avers he did not receive a copy of the January 31st order until February 25, 2020. Appellant's Brief at 1.

Thereafter, on March 9, 2020, Appellant filed a notice of appeal, purportedly from the court's January 31st order.[10]  *See* Appellant's Notice of Appeal, 3/9/20.  In separate *pro se* correspondence, Appellant stated: "I assume [the January 31st order] is a denial of my ongoing PCRA as such I am sending a notice of appeal to the [S]uperior [C]ourt[.]"  Appellant's *pro se* correspondence, 2/25/20.  However, on April 20, 2020, the PCRA court entered another order "to clarify any ambiguity" in its February 24th order, and stating that Appellant's PCRA petition was denied "effective February 24, 2020."  Order, 4/20/20.  On April 22, 2020, the PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The order was not mailed until May 4, 2020.  *See* Order, 4/22/20, Affidavit of Service.  Appellant complied, and filed a "Statement" on May 18, 2020.

---

[10] We note Appellant attached to his notice of appeal a certificate of service, certifying he mailed the notice on February 25, 2020.  Thus, pursuant to the prisoner mailbox rule, we will consider the appeal timely filed.  *See* *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1074 (Pa. Super. 2019) ("[T]he prisoner mailbox rule provides that a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing.") (citation omitted).  Furthermore, as we discuss *infra*, the PCRA court subsequently clarified that its order dismissing Appellant's PCRA petition was the February 24th order.  *See* Order, 4/20/20.  We note that, although Appellant's notice of appeal lists the January 31st order, it was filed within 30 days of the February 24th order.

Preliminarily, we note the brief filed by Appellant fails to conform, in any respect, with the Pennsylvania Rules of Appellate Procedure.[11]  **See** Pa.R.A.P. 2101 ("Briefs . . . shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise . . . if the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."). Furthermore:

> [A]lthough this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant.  Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court.

**Commonwealth v. Lyons**, 833 A.2d 245, 252 (Pa. Super. 2003) (citations omitted).

The defects in Appellant's brief are substantial.  The brief does not include a statement of jurisdiction, the text of the order on appeal, a statement of questions involved, a statement of the case, or a summary of the argument.  **See** Pa.R.A.P. 2111, 2114-2118.  Rather, Appellant's brief consists of a five-page, rambling argument of perceived wrongs committed by the PCRA court and prior counsel, absent any citation to authority.  **See** Appellant's Brief at 1-5.  Nevertheless, in the interests of justice, we decline to quash this appeal, and will address the claims that we can readily discern from Appellant's brief.  **See Lyons**, 833 A.2d at 252.

---

[11] We also note the Commonwealth did not file a brief in this matter.

Our review of an order denying a PCRA petition is well-settled: "we must determine whether the PCRA court's order 'is supported by the record and free of legal error.'" ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citation omitted). However, before we consider the claims Appellant raises on appeal, we must first determine if the January 17, 2019, petition was timely filed. ***See*** PCRA Ct. Op., 7/16/20, at 3. The statutory requirement that a PCRA petition be filed within one year of the date the judgment of sentence becomes final is both "mandatory and jurisdictional in nature[,]" and a PCRA court may not ignore the untimeliness of a petition to address the merits of the issues raised therein. ***Commonwealth v. Taylor***, 67 A.3d 1245, 1248 (Pa. 2013). ***See also*** 42 Pa.C.S. § 9545(b)(1).

In his "no merit" letter, Attorney Buttner concluded the January 17, 2019, PCRA petition was an untimely, second petition — a position the PCRA court later adopted in its July 16, 2020, opinion. ***See*** Counsel's No Merit Letter, 1/21/20, at 11-17; PCRA Ct. Op., 7/16/20, at 3. Counsel found that because Appellant's "first PCRA petition resulted in a resentencing only . . . the resentencing of November 16, 2017 did not reset the clock or render a new and the later date as the date upon which the judgment of sentence became final." Counsel's No Merit Letter, at 15. Thus, Attorney Buttner determined the matter was controlled by ***Commonwealth v. McKeever***, 947 A.2d 782 (Pa. Super. 2008). We disagree.

In ***McKeever***, the petitioner's judgment of sentence was final on October 2, 1995. ***McKeever***, 947 A.2d at 786. However, in 2003, a federal

district court granted *habeas corpus* relief, concluding he was "actually innocent" of corrupt organization charges. *Id.* at 783. The case was remanded to the trial court, which vacated the corrupt organization sentences, but did not disturb the petitioner's remaining sentences. *Id.* at 784. The new judgment of sentence was affirmed by this Court, and a petition for allowance of appeal was denied by the Pennsylvania Supreme Court. *Id.* Less than one year later, in 2007, the petitioner filed a PCRA petition challenging his guilty plea with respect to the other convictions. *Id.* The PCRA court found the petition was timely filed within one year of the date the petitioner's re-sentence was affirmed, but, nevertheless, denied relief on the merits. *Id.* at 784-85.

On appeal, this Court determined the 2007 petition was untimely filed. We opined that the federal court's "grant of federal *habeas corpus* relief as to [the petitioner's] corrupt organizations convictions [did] not 'reset the clock' for the finality of [the petitioner's] judgment of sentence so as the make the [2007] PCRA petition [the petitioner's] 'first' for timeliness purposes." *McKeever*, 947 A.2d at 785. Relying on *Commonwealth v. Dehart*, 730 A.2d 991, 994 n.2 (Pa. Super. 1999), the panel explained a successful PCRA petition does not result in a new final judgment date "where the relief granted . . . neither restored a petitioner's direct appeal rights nor disturbed his conviction, but rather affected his sentence only." *McKeever*, 947 A.2d at 785. The *McKeever* Court concluded:

Although [the petitioner] successfully challenged his corrupt organizations convictions and sentences successfully in federal court, the remainder of his convictions, each having a distinct sentence, were not disturbed by the [the federal court's] grant of *habeas corpus* relief or by the trial court when it vacated the corrupt organizations sentences in its resentencing order. Further, while it is correct that [the petitioner] had an absolute constitutional right to appeal his judgment of sentence entered after the [the federal court's] grant of *habeas corpus* relief, in that direct appeal, he was permitted to raise issues pertaining only to the re-sentencing procedure itself; his underlying claims of trial error regarding his non-vacated convictions could not be addressed on direct appeal from re-sentencing. Therefore, for purposes of the PCRA, those convictions and their sentences became final on October 2, 1995. Our conclusion is wholly supported by the principle that, where a defendant is convicted of multiple charges and sentenced on those charges separately, his appellate challenge to one of the sentences, to the exclusion of the others, does not affect the operation of the other sentences.

*Id.* at 785–86 (citations and footnotes omitted). Thus, this Court determined the petition filed in 2007 was untimely.

Here, however, our review of the record reveals the relief granted by the PCRA court in its August 17, 2017, order consisted of more than simply sentencing relief — Appellant's direct appeal rights were reinstated *nunc pro tunc*. The text of the order reads:

[A]fter PCRA Hearing . . . and upon agreement of Counsel, the Court finds that [Appellant] requested his Counsel enter an Appellant . . . and attempt[ed] to file an Appellant, which was denied due to [Appellant] being represented by Counsel,

IT IS ORDERED that said PCRA be and is hereby granted.

IT IS FURTHER ORDERED that this matter shall be scheduled for resentencing upon completion of the supplemental Mental Health Evaluation to determine whether he is severely mentally disabled and in need of treatment pursuant to the Mental Health Procedures Act.

Order, 8/17/17.

Therefore, we conclude Appellant's November 16, 2017, resentencing reset the clock for purposes of post-conviction relief. This Court affirmed the resentencing on October 18, 2018, and Appellant had 30 days, or until November 9, 2018, to seek allowance of appeal with the Pennsylvania Supreme Court. *See* Pa.R.A.P. 1113(a). Because he did not do so, his judgment of sentence was final for PCRA purposes on that day. *See* 42 Pa.C.S. § 9545(3). Appellant had one year — or until November 9, 2019 — to file a timely petition, and, thus, his present petition, filed on January 17, 2019, was timely filed. *See* 42 Pa.C.S. § 9545(b)(1).

Upon our review of Appellant's brief, we discern the following claims: (1) Appellant was "denied his scheduled video conference hearing [in March of 2020] to challeng[e] Attorney . . . Buttner['s] no merit letter[;]" (2) Appellant was not given a blood test upon his arrest to "determine what drugs were in [his] system[;]" and (3) Appellant relied on plea counsel's "legally incorrect advice . . . [that Appellant] was looking at 15 to 30 years at sentencing and did not advise [him] that the plea was an open plea" where he faced a 30 to 60 year maximum sentence. Appellant's Brief at 1-4. Appellant concludes that he "does not want a new trial," but rather, he seeks to be resentenced to a term of 15 to 30 years' imprisonment. *Id.* at 5.

First, Appellant challenges the PCRA court's decision to grant appointed counsel's petition to withdraw without first conducting a hearing. Appellant's Brief at 1. Appellant cites no authority for his position that a PCRA court is

required to conduct a hearing before granting PCRA counsel's motion to withdraw. Rather, **Turner**/**Finley** and their progeny mandate: (1) counsel must file a "no merit" letter detailing their review of the claims the petitioner seeks to raise, including an explanation of why those claims are meritless; (2) the court must conduct an independent evaluation of those claims and conclude they are meritless; and (3) counsel must serve both the petition and "no merit" letter on the petitioner, "along with a statement that if the court granted counsel's withdrawal request, the [petitioner] may proceed *pro se* or with a privately retained attorney." **Commonwealth v. Rykard**, 55 A.3d 1177, 1184 (Pa. Super. 2012). Thus, no hearing is required, and Appellant is entitled to no relief.[12]

Second, Appellant challenges law enforcement's failure to give him a blood test upon his arrest. Appellant's Brief at 2. Indeed, he maintains he requested "the guards" to test his blood "at least 12 times, [but they] just ignored [him]." *Id.* at 5. Appellant insists a blood test would have revealed that "someone was putting crystal meth in [his] e-cigarette and coffee[,]" which resulted in his crazed behavior. *Id.* at 4.

This claim fails for two reasons. First, because it could have been raised before trial, it is waived. **See** 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if

_____

[12] We note that Appellant does **not** challenge the PCRA court's failure to provide notice of its intent to dismiss the petition without first conducting an evidentiary hearing, as is required by Pa.R.Crim.P. 907. **See Commonwealth v. Taylor**, 65 A.3d 462, 468 (Pa. Super. 2013) ("The failure to challenge the absence of a Rule 907 notice constitutes waiver.").

the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."). Second, it is evident Appellant hoped the results of a blood test would have provided a defense to the crimes charged. However, where, as here, an appellant pleads guilty, he waives "all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." ***Commonwealth v. Morrison***, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted). Indeed, Appellant voluntarily chose to plead guilty to his offenses. ***See*** N.T., 1/8/16, at 17-18. Thus, no relief is warranted.

In his final claim, Appellant challenges the ineffectiveness of prior counsel, who Appellant maintains informed him he would be sentenced to no more than 15 to 30 years' imprisonment. Appellant's Brief at 2-4. Because, as we discuss ***infra***, we are compelled to vacate Appellant's guilty plea, we need not address this claim.

As noted above, our review of the record has revealed a defect in Appellant's guilty plea that has, thus far, been overlooked — his plea to **attempted murder in the third degree**. ***See*** Guilty Plea Agreement, 11/12/15 (Offense – Attempt/Murder of Third Degree); N.T., 1/8/16, at 11, 15-19.

This Court has stated, on numerous occasions, that a person cannot commit the crime of attempted second or third degree murder.

The question squarely presented to us is whether someone can attempt to commit murder of the second or third degree. We think not. A person commits an attempt when, **with intent to commit a specific crime**, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901. Murder of the second or third degree occurs where the killing of the victim is the unintentional result of a criminal act. Thus, an attempt to commit second or third degree murder would seem to require proof that a defendant **intended** to perpetrate an **unintentional** killing—which is logically impossible. While a person who only intends to commit a felony may be guilty of second degree murder if a killing results, and a person who only intends to inflict bodily harm may be guilty of third degree murder if a killing results; it does not follow that those persons would be guilty of **attempted** murder if a killing did not occur. They would not be guilty of attempted murder because they did not **intend** to commit murder—they only intended to commit a felony or to commit bodily harm.

***Commonwealth v. Griffin***, 456 A.2d 171, 177 (Pa. Super. 1983). ***See also***

***Commonwealth v. Predmore***, 199 A.3d 925, 929 n.1 (2018) (*en banc*)

("Neither second- nor third-degree murder require a showing of specific intent

to kill. Attempted murder is, by definition, attempted first-degree murder."),

*appeal denied*, 208 A.3d 459 (Pa. 2019); ***Commonwealth v. Williams***, 730

A.2d 507, 511 (Pa. Super. 1999) ("There simply is no such crime as attempted

second or third degree murder.");***Commonwealth v. Spells***, 612 A.2d 458,

461 n.5 (Pa. Super. 1992) ("An attempt to commit murder can only constitute

an attempt to commit murder of the first degree, because both second and

third degree murder are **unintended results** of a specific intent to commit **a**

**felony or serious bodily harm**, not to kill.").

Because Appellant pled guilty to a crime that is not cognizable, we

conclude his sentence for attempted third degree murder is illegal. The fact

that Appellant voluntarily entered a guilty plea to the crime is of no moment: "Our cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance." *Commonwealth v. Rivera*, 154 A.3d 370, 381 (Pa. Super. 2017) (*en banc*). Furthermore, we may properly raise this issue *sua sponte*: "[A] court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition." *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005).

We also conclude that because the defect at issue here — Appellant's guilty plea to a crime that does not exist — resulted from a "shared misapprehension" by both parties at the outset of the plea negotiations, we must vacate Appellant's guilty plea. *See Commonwealth v. Melendez-Negron*, 123 A.3d 1087, 1094 (Pa. Super. 2015).

In *Melendez-Negron*, the defendant entered a guilty plea to drug offenses under the mistaken belief that he was subject to a mandatory minimum sentence. *Melendez-Negron*, 123 A.3d at 1089. He sought PCRA relief, arguing that his sentence was illegal under *Alleyne v. United States*, 570 U.S. 99 (2013), which was decided five months before he was sentenced. *Id.* at 1089. *See Alleyne*, 570 U.S. at 103 ("[A]ny fact that increases the mandatory minimum is an 'element' that must be submitted to the jury."). The PCRA court granted relief in the form of resentencing. *Melendez-Negron*, 123 A.3d at 1089. On appeal, however, the Commonwealth argued,

*inter alia*, that the PCRA court's relief was insufficient, and the case should be remanded to "the *status quo* prior to the entry of the guilty plea," since both parties had negotiated the terms of the plea agreement under the mistaken belief that the mandatory minimum sentence was applicable. ***Id.*** at 1091-92 (citation omitted). This Court agreed, concluding that "both parties to a negotiated plea agreement are entitled to receive the benefit of their bargain." ***Id.*** at 1093 (citation omitted). Because "the shared misapprehension that the mandatory minimum sentence . . . applied to [the defendant] tainted the parties' negotiations at the outset," we vacated the defendant's guilty plea and remanded for further proceedings.[13] ***Id.*** at 1094.

We note the Pennsylvania Supreme Court subsequently limited the ruling in ***Melendez-Negron*** to cases involving "negotiated guilty pleas, not to open guilty pleas." ***Commonwealth v. DiMatteo***, 177 A.3d 182, 196 (Pa. 2018). In that case, after the defendant entered an open guilty plea to drug trafficking offenses, the trial court imposed several mandatory minimum sentences. ***Id.*** at 183-84. The ***DiMatteo*** Court first determined that because the defendant "presented his claim in a timely petition for post conviction relief, he [was] entitled to have his illegal sentence remedied." ***Id.*** at 192. However, the Court rejected the Commonwealth's claim that the case should

---

[13] The ***Melendez-Negron*** Court noted that the defendant did not seek to withdraw his plea, but rather, like Appellant here, only "asked to be resentenced[.]" ***See Melendez-Negron***, 123 A.3d at 1091 n.7.

be returned to the "'*status quo*' prior to the negotiated plea agreement." *Id.* at 194. The Court opined:

> In the instant case, at the time [the defendant] entered into his open guilty plea, there was no "shared misapprehension" regarding the legality of the sentences that could be imposed, and there was no agreement or bargain between the Commonwealth and [the defendant] as to sentencing at all. The sentencing court did not impose its sentence under a misconception over what sentence it could impose under law. Rather, following sentencing, *Alleyne* was decided, rendering the mandatory minimum schemes with the defective judicial fact-finding procedure illegal. This is not an occasion where a defendant and the Commonwealth bargained for a term of imprisonment, and the defendant reneged. [The defendant] pleaded guilty to a number of counts, with no agreement or contract with the Commonwealth and then challenged the legality of his sentence. The remedy is a correction of the illegal sentence.

*Id.* at 196 (citation omitted).

Although Appellant entered an open guilty plea in the present case, we conclude the facts *sub judice* are controlled by *Melendez-Negron*. Indeed, here, Appellant, the Commonwealth and the trial court all operated under a "shared misapprehension" that Appellant could enter a guilty plea to a charge of attempted third degree murder. This "shared misapprehension" tainted the entire plea proceedings. Accordingly, we are compelled to not only reverse the order denying PCRA relief, but to vacate Appellant's guilty plea.

Thus, because Appellant entered a guilty plea to an offense that is not cognizable, we reverse the order denying PCRA relief, vacate the judgment of sentence, vacate Appellant's guilty plea, and remand for further proceedings.

Order reversed. Judgment of sentence vacated. Guilty plea vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2020