J-A05031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MACK D'JUAN HILL | : | |
| | : | |
| Appellant | : | No. 381 WDA 2018 |

Appeal from the Judgment of Sentence February 2, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000151-2002,
CP-25-CR-0000152-2002

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:              **FILED MARCH 14, 2019**

Mack D'Juan Hill (Appellant) appeals from the judgment of sentence entered following a re-sentencing hearing pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012). After careful review, we affirm.

Appellant was born on April 10, 1984. On October 2, 2001, after conspiring with two other individuals, Appellant committed an armed robbery, during the course of which Appellant attempted to shoot Rolando Ruiz. The next night, Appellant and his co-conspirators committed a similar robbery. While robbing Darrell Dickerson, Appellant shot and killed him.

As a result of Appellant's actions on October 2, 2001, a jury convicted Appellant of attempted criminal homicide, robbery, conspiracy to commit robbery, recklessly endangering another person, and possession of an

instrument of crime.[1]  For the subsequent robbery and killing on October 3, 2001, Appellant was convicted of second-degree murder, robbery, conspiracy to commit robbery, firearms not to be carried without a license, and receiving stolen property.[2]  On September 18, 2002, the trial court sentenced Appellant to an aggregate term of life in prison without parole, plus 11½ to 23 years of incarceration.

On February 24, 2016, Appellant filed a petition seeking relief under the Post Conviction Relief Act (PCRA).[3]  In his petition, Appellant challenged the legality of his life without parole sentence pursuant to **Miller** and **Montgomery v. Louisiana**, — U.S. —, 136 S. Ct. 718 (2016).  The court granted Appellant's petition on July 7, 2016.  On February 2, 2018, Appellant appeared before the court, which re-sentenced Appellant to an aggregate term of 47.3 years to life of incarceration.  Specifically, the court re-sentenced Appellant at his second-degree murder conviction to a term of 35 years to life.

On February 12, 2018, Appellant filed a post-sentence motion, which the trial court denied.  Appellant filed this timely appeal.  Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

---

[1]  18 Pa.C.S.A. §§ 901(a)/2502, 3701(a)(1)(ii), 903/3701(a)(1)(ii), 2705, and 907(a).

[2]  18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903(a)(1)/3701, 6106(a)(1), and 3925(a).

[3]  42 Pa.C.S.A. §§ 9541-9546.

On appeal, Appellant presents the following issues for review:

1. Does Appellant raise a substantial question for appellate review?

2. Did the trial court err in sentencing Appellant to a de facto [l]ife without [p]arole sentence?

3. Did the trial court improperly consider Appellant's age at the time of the offenses?

4. Did the trial court err in giving Appellant a disproportionately harsh sentence?

5. [Did t]he trial court impose on Appellant an excessive sentence?

Appellant's Brief at 8.

In his first, third, and fifth issues, Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing

- 3 -

code or is contrary to the fundamental norms of the sentencing process."
*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

While Appellant has complied with the first two prongs of this test by raising his discretionary sentencing claims in a timely post-sentence motion and filing a timely notice of appeal, he failed to include in his brief a Rule 2119(f) concise statement. However, because the Commonwealth has not objected, we will examine whether Appellant's claims present substantial questions. *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004) ("[W]hen the appellant has not included a Rule 2119(f) statement and the [Commonwealth] has not objected, this Court may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate[.]") (citation omitted).

Appellant's first discretionary claim[4] asserts that the trial court relied upon an impermissible factor when fashioning his sentence. This raises a substantial question. *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003) ("[A] claim that the sentence is excessive because the trial court

---

[4] We note that the first question presented in Appellant's Brief is labeled "Appellant Raises a Substantial Question." Appellant's Brief at 13. As we find substantial questions presented by both of Appellant's discretionary sentencing claims, we forgo a further substantive analysis of this question presented.

relied on impermissible factors raises a substantial question.") (citation omitted).

Appellant further argues that he received an excessive sentence where the trial court imposed "consecutive sentences without properly considering mitigating factors." Appellant's Brief at 14. This argument also presents a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("This Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citations omitted). We thus review Appellant's sentencing claims mindful of the following:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Cook*, 941 A.2d 7, 11-12 (Pa. Super. 2007) (citations omitted).

Appellant claims "the trial judge . . . improperly sentenced [Appellant] when it included as a sentencing factor the age of Appellant at the time of the

offense." Appellant's Brief at 44. The relevant portion of 42 Pa.C.S.A. § 9721(b) states:

> In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

*Id.* This Court has also held, "[w]hen a sentencing court has reviewed a pre[-]sentence investigation report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence."

*Baker*, 72 A.3d at 663 (citing *Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006)). Additionally:

> [i]n imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, **age**, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Fowler*, 893 A.2d at 767-68 (citing *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004)) (some citations omitted) (emphasis added).

Appellant takes issue with the following statement made by the trial court during re-sentencing:

You were 17 years old and 6 months. So, had this been committed six months later as [the Commonwealth] pointed out, we wouldn't even be here.

Appellant's Brief at 45 (citing N.T., 2/2/18, at 128).

Upon review, we are satisfied that the trial court committed no abuse of discretion in referring to Appellant's age. While Appellant argues the "trial [court] improperly used his age as an aggravating rather than a mitigating factor," Appellant's Brief at 45, we find no support for this assertion in the notes of testimony. N.T., 2/2/18, at 121-131. As referenced above, a defendant's age is specifically prescribed by this Court as a factor a "trial court should refer to" during the imposition of a sentence. *Fowler*, 893 A.2d at 767. Further, age is now a mandatory consideration when a trial court is determining whether to impose a sentence of life without parole. 18 Pa.C.S.A. § 1102.1(d)(7)(i) ("In determining whether to impose a sentence of life without parole . . . the court shall consider and make findings on the record regarding . . . [a]ge-related characteristics of the defendant, including . . . [a]ge."). The trial court was therefore within its discretion in stating on the record Appellant's age at the time of the crimes. As such, this issue is meritless.

Appellant further argues that his sentence was excessive "given the expert testimony [of Randolph Matuscak] . . . offered at his re-sentencing that he is amenable to rehabilitation and has a low risk to re-offend." Appellant's Brief at 52. Appellant specifically contends:

- 7 -

> [T]he trial [court] ignored the uncontested and overwhelming evidence suggesting that despite Appellant's rough formative years, he has made great emotional and academic strides in prison, demonstrating his commitment to rehabilitation. The trial [court's] erroneous interpretation of the expert's report combined with the trial [court's] failure to discern the significance of Appellant's positive growth while incarcerated resulted in an unduly and excessively harsh sentence imposed on Appellant, calling out for relief by this Court.

*Id.* at 57.

At the February 2, 2018 hearing, the trial court acknowledged that it was in receipt of, and "reviewed," Appellant's pre-sentence investigation report prepared in anticipation of re-sentencing. N.T., 2/2/18, at 121. Prior to imposing Appellant's sentence, the trial court stated:

> I read Mr. Matuscak's report in its entirety[.] . . . I was disappointed that Mr. Matuscak didn't acquaint himself with the facts of this case. He didn't even read the trial transcripts but yet was willing to render opinions and judgments thereon. You know, I certainly respect his expertise as a social worker, but in reading his report it was rather striking the selective information that he had or that he relied on and my impression is that he really wasn't a disinterested expert, but was clearly serving as an advocate. Now having said that, I appreciated the history that he provided, he obviously did a lot of research in terms of upbringing of [Appellant] and the research related to what [Appellant] has done while he has been in prison. So, there was some value there in his report.
>
>         *     \*     \**
>
> I do recognize and consider the fact that you have matured while in jail. . . That there are programs that you've taken advantage of within the prison in addition to getting your GED and that you've expressed some goals and that you have recognized the impact on victims. I did view the entirety of the CD that was provided of your talk.

I do believe that there is some potential for rehabilitation for you, [Appellant], so I want to fashion or try to balance all of these factors in arriving at a sentence in this case.

*Id.* at 121, 122, 129-130.

In its opinion, the trial court further explained:

Appellant's allegation of error based on the purported failure to adequately consider the expert testimony of Randolph A. Matuscak is belied by the record. The entirety of Mr. Matuscak's testimony was considered, however, it was found to be largely unhelpful[.]

*       *       *

The majority of Mr. Matuscak's testimony focused on Appellant's traumatic childhood and the role those external factors played in causing Appellant's criminal acts. While Mr. Matuscak's extensive research describing Appellant's childhood was helpful, and a factor cited as part of the sentencing rationale, Matuscak's premise that these external factors caused him to commit homicide was not accepted[.] . . .

Appellant's unfortunate upbringing was considered, however it did not exonerate Appellant of the robberies, attempted homicide and homicide he intentionally committed in the two cases at bar. Appellant's childhood circumstances were similar to what his brother Calvin also experienced. Calvin and Appellant were close in age and bonded as biological brothers. Calvin testified for Appellant at re-sentencing. Calvin was exposed to the same external forces as Appellant. Yet Calvin had no history of committing violent crimes. There was also two other siblings close in age to Appellant who did not commit violent crimes despite their domestic instability. These facts undermine Mr. Matuscak's premise that Appellant's crimes were the direct result of his childhood circumstances.

Mr. Matuscak's premise was also refuted by Appellant. To his credit, Appellant did not try to minimize his culpability because of his traumatic childhood.

Mr. Matuscak's attempt to whitewash the facts of these crimes turns a blind eye to what the jury unanimously agreed was

proven beyond a reasonable doubt. These were crimes of extreme violence which were carefully planned out on both occasions.

\* \* \*

There was considerable thought over an extensive period of time put into the appropriate re-sentence for Appellant. All of the factors, including the mitigating factors Appellant emphasizes, were considered to arrive at a balanced sentence. This sentence protects the public from the proven ability of Appellant to engage in depraved acts of violence. Yet, having found Appellant has the potential for rehabilitation, the sentence provides Appellant with light at the end of the tunnel. While incarcerated, or after his release, Appellant can still live a meaningful life, which is better than the fate that befell Darrell Dickerson.

Trial Court Opinion, 5/16/18, at 6, 7-8, 9.

Based on our review of the transcript of Appellant's re-sentencing hearing, including the trial court's remarks cited above, we conclude that the court considered the appropriate factors when determining Appellant's sentence. In addition to reviewing Appellant's pre-sentence investigation report, the court considered Appellant's potential for rehabilitation, his activities while incarcerated, as well as the report and testimony provided by Appellant's mitigation expert. Accordingly, we discern no abuse of discretion.

Appellant additionally disputes the legality of his sentence. We are mindful that "[i]ssues relating to the legality of a sentence are questions of law. Our standard of review over such questions is *de novo* and our scope is plenary." ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014) (citation omitted). We note:

The scope and standard of review applied to determine the legality of a sentence are well established. If no statutory authorization

- 10 -

exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. In evaluating a trial court's application of a statute, our standard of review is plenary and is limited to determining whether the trial court committed an error of law.

***Commonwealth v. Dixon***, 161 A.3d 949, 951 (Pa. Super. 2017) (citation omitted).

Appellant claims that "[g]iven that he was 18 years old at his initial sentencing, the sentence of 47.3 years to life violates both the Pennsylvania and United States Constitution[s'] prohibition[s] against cruel and unusual punishment and runs afoul of ***Miller***, ***Montgomery***, and ***Batts II***[.]" Appellant's Brief at 28-29. This statement is premised on Appellant's assertion that his sentence "constitutes a *de facto* life sentence" because "he will remain in prison until the age of 65." ***Id.*** at 29.

We have previously summarized the applicable authority:

> In ***Miller***, the Supreme Court of the United States held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing. Subsequently, in ***Montgomery***, the Court held that the ***Miller*** decision announced a substantive rule of constitutional law that applies retroactively.

***Commonwealth v. Bebout***, 186 A.3d 462, 472 n.1 (Pa. Super. 2018) (citations omitted).

The Pennsylvania Supreme Court in ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) (***Batts II***) addressed how a sentencing court should proceed following ***Miller*** when faced with re-sentencing a juvenile offender

who was originally sentenced, pre-**Miller**, to life imprisonment without the possibility of parole. Our Supreme Court explained:

> For those defendants for whom the sentencing court determines a life-without-parole sentence is inappropriate, "it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon re[-]sentencing[.]"

**Batts II**, 163 A.3d at 421 (quoting **Commonwealth v. Batts**, 66 A.3d 286, 296-97 (Pa. 2013) (**Batts I**)).[5] "The sentencing court should fashion a minimum term of incarceration using, as guidance, [S]ection 1102.1(a) of the Crimes Code." **Id.** at 484.

Section 1102.1, which the General Assembly enacted in the wake of the **Miller** decision, sets forth the guidelines for sentencing those who commit second-degree murder while under the age of 18:

> **(c) Second degree murder.**--A person who has been convicted after June 24, 2012, of a murder of the second degree, second degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at

---

[5] In **Batts I**, the Pennsylvania Supreme Court addressed for the first time after **Miller** the sentencing of a juvenile offender convicted of murder. Noting that the United States Supreme Court in **Miller** declined to place a "categorical ban" on life-without-parole sentences for juvenile offenders, our Supreme Court in **Batts I** held that juvenile offenders convicted of murder could be subject to a life-without-parole sentence only after the sentencing court considered the criteria outlined in **Miller**. **Id.** at 296-99. **Batts II** followed four years later when the Supreme Court set forth the procedure for re-sentencing juvenile offenders who were improperly sentenced to life without parole prior to **Miller**.

the time of the commission of the offense shall be sentenced as follows:

> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

18 Pa.C.S.A. § 1102.1(c)(1).[6] While we note that Section 1102.1 is not directly applicable to Appellant because he was convicted prior to June 24, 2012, the Supreme Court made clear in **Batts II** that where a trial court determines that a sentence of life imprisonment without the possibility of parole is inappropriate for a juvenile offender who was originally sentenced to life without parole prior to **Miller**, the minimum sentence is left to the trial court's discretion on re-sentencing, using Section 1102.1 as guidance. **Batts II**, 163 A.3d at 421.

In **Commonwealth v. Foust**, 180 A.3d 416 (Pa. Super. 2018), we held that upon re-sentencing a defendant under **Miller**, "a trial court may not impose a term-of-years sentence, which constitutes a *de-facto* [life-without-parole] sentence, on a juvenile offender convicted of homicide unless it finds,

---

[6] Given the charges the defendant faced in **Batts I**, the court specifically referred to subsection (a) of Section 1102.1, which addresses sentencing for first-degree murder. Since that decision, we have also applied the **Batts I** sentencing scheme in the context of juveniles convicted of second-degree murder prior to June 12, 2012 by also using Section 1102.1 as guidance in fashioning a minimum sentence. **See Commonwealth v. Machiote**, 172 A.3d 595 (Pa. Super. 2017); **Commonwealth v. Melvin**, 172 A.3d 14 (Pa. Super. 2017); **see also** 18 Pa.C.S.A. § 1102.1(c) (subsection of statute specifically referring to the sentencing of juvenile offenders convicted of second-degree murder).

- 13 -

beyond a reasonable doubt, that he or she is incapable of rehabilitation." *Id.*

at 431. However, we "explicitly decline[d] to draw a bright line . . . delineating

what constitutes a *de facto* [life without parole] sentence and what constitutes

a constitutional term-of-years sentence." *Id.* at 438. Similarly, we

"decline[d] to set forth factors that trial courts must consider when making

this determination." *Id.* We further explained:

> There are certain term-of-years sentences which clearly constitute
> *de facto* [life without parole] sentences. For example, a 150—
> year [minimum] sentence is a *de facto* [life without parole]
> sentence. Similarly, there are clearly sentences which do not
> constitute *de facto* [life without parole] sentences. A sentence of
> 30 years to life falls into this category. We are unaware of any
> court that has found that a sentence of 30 years to life
> imprisonment constitutes a *de facto* [life without parole] sentence
> for a juvenile offender. Even the study with the shortest life
> expectancy for an offender in [the a]ppellant's position places his
> life expectancy at 49 years, *i.e.*, beyond 30 years.

*Id.*

Including **Foust**, there have been numerous published opinions of this

Court analyzing whether a sentence fashioned by a trial court amounted to a

*de facto* life without parole sentence for a juvenile offender. **See, e.g.**, **Foust**,

180 A.3d at 438 (holding that a sentence of 30 years to life did not constitute

a *de facto* life sentence, where the defendant was charged with two counts of

first-degree murder and received consecutive, 30-year-to-life sentences at

each conviction); **Bebout**, 186 A.3d at 469-70 (holding that a sentence of 45

years to life did not constitute a *de facto* life without parole sentence);

**Commonwealth v. White**, 193 A.3d 977, 986 (Pa. Super. 2018) (holding a

sentence of 35 years to life did not constitute a *de facto* life without parole sentence).

Instantly, Appellant contends the entirety of his sentence received should be used in determining whether he was re-sentenced to a *de facto* life without parole sentence. Appellant's Brief at 36-38. However, as admitted by Appellant,[7] in ***Foust***, we held that "when considering the constitutionality of a sentence, the **individual** sentences must be considered when determining if a juvenile received a *de facto* [life without parole] sentence." ***Foust***, 180 A.3d at 434 (emphasis added). As such, Appellant's sentence for second-degree murder must be analyzed separately from the sentences received at his other convictions.

The trial court re-sentenced Appellant to a minimum term of 35 years of incarceration. At the time of his effective sentence date on December 26, 2001, Appellant's age was 17 years, 8 months. Sentencing Order, 9/18/02, at 1. Thus, Appellant will be parole-eligible at the age of 52. With prior precedent in mind when viewing the instant record,[8] we cannot conclude that

---

[7] Appellant's Brief at 37 ("Admittedly, the court in [***Foust***] did hold that it would examine sentences separately in assessing whether a particular sentence constituted a *de facto* [life without parole] sentence.").

[8] "There is simply no comparison between the opportunity to be paroled at 60 years of age and 100+ years of age. The difference is, quite literally, a lifetime." ***White***, 193 A.3d at 986 (citing ***Bebout***, 186 A.3d at 469-70).

- 15 -

Appellant's minimum sentence constitutes a *de facto* life without parole sentence. This issue lacks merit.

Appellant's next issue "contends that the sentence he received is disproportionate to other sentences of similar circumstance in the Commonwealth," and is therefore "violative of the Eighth Amendment." Appellant's Brief at 46, 51. We have stated:

> Article 1, Section 13 of the Pennsylvania Constitution provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13. "[T]he guarantee against cruel punishment contained in the Pennsylvania Constitution, Article 1, Section 13, provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution." ***Commonwealth v. Spells***, 612 A.2d 458, 461 (Pa. Super. 1992). The Eighth Amendment does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are *grossly disproportionate* to the crime. ***See Commonwealth v. Hall***, 701 A.2d 190, 209 (Pa. 1997) (citing ***Harmelin v. Michigan***, 501 U.S. 957, 1001 (1991) (emphasis added).
>
> In ***Commonwealth v. Spells***, 612 A.2d 458, 462 (Pa. Super. 1992) (*en banc*), this Court applied the three-prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in ***Solem v. Helm***, 463 U.S. 277 (1983):
>
>> [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminal in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
>
> ***Spells***, 612 A.2d at 462 (quoting ***Solem***, 463 U.S. at 292). However, this Court is not obligated to reach the second and third prongs of the ***Spells*** test unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference

- 16 -

of gross disproportionality." ***Spells***, ***supra*** at 463 (citation omitted) b.

***Commonwealth v. Lankford***, 164 A.3d 1250, 1252-53 (Pa. Super. 2017).

Appellant's proportionality claim is based upon the Supreme Court's holding in ***Batts II*** that, "for a sentence of life without parole to be proportional as applied to a juvenile murderer, the sentencing court must first find, based on competent evidence, that the offender is entirely unable to change." Appellant's Brief at 49 (citing ***Batts II***, 163 A.3d at 435); ***see also Batts II***, 163 A.3d at 435-46 ("A sentence of life in prison without the possibility of parole for a murder committed when the defendant was a juvenile is otherwise disproportionate and unconstitutional under the Eighth Amendment.") (citing ***Montgomery***, 136 S. Ct. at 734, 735). Appellant avers that because the trial court failed to conduct such an analysis in fashioning his sentence, the reasoning provided by the trial court "falls short of what is required by ***Batts*** [***II***] to ensure that a juvenile receives a proportionate sentence[.]" Appellant Brief at 51.

Instantly, we determined that Appellant's 35-year minimum does not constitute a *de facto* life without parole sentence. The trial court was therefore not bound by the holding in ***Batts II***, requiring an inability-to-change finding where a juvenile defendant is sentenced to life without parole. Accordingly, Appellant's sentence is constitutional.

In sum, the trial court did not abuse its discretion in sentencing Appellant, and the sentence Appellant received was legal. Because Appellant's issues lack merit, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/14/2019