J-S30025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                             :  PENNSYLVANIA
                                             :

          v.                            :

BASIL LAMARR DUNCAN               :

           Appellant          :  No. 1348 MDA 2023

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0000735-2021

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:       **FILED: FEBRUARY 6, 2025**

Basil Lamarr Duncan ("Duncan") appeals from the judgment of sentence following his convictions for rape by forcible compulsion, criminal attempt - statutory sexual assault, involuntary deviate sexual intercourse ("IDSI"), two counts of aggravated indecent assault without consent, and IDSI – victim less than sixteen years old, and related offenses.[1]  We affirm.

The trial court set forth the following factual and procedural history:

> There were two minor victims in this case, N.H. and S.G. N.H. testified that she was [thirteen] at the time of the offense and that she had gone to [Duncan's] house to see . . . her ex-boyfriend[,] J.D. ([Duncan's] son).  N.H. testified that it was common for her to visit [Duncan's] house to hang out with J.D. N.H. testified that when she arrived at [Duncan's] house, [his] dog was outside running around.  N.H. made the decision to put the

---

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 3121(a)(1), 901(a) (attempt to commit § 3122.1(b)), 3123(a)(7), 3125(a)(1) (two counts), 3123(a)(7), respectively.

dog inside [Duncan's] home for the dog's safety. When N.H. entered the home, [Duncan] came from the back bedroom of the trailer.

N.H. testified that[] when [Duncan] saw [her] in the home[,] he offered her a drink. When she declined, he pushed her onto the couch and pulled her pants and underwear down. N.H. stated that [Duncan] began touching [her] vagina with his finger and then began touching [it] with his tongue. N.H. testified that [Duncan] had asked her if she was a virgin. She related that she was, at which point [Duncan] unzipped his pants and pulled his penis out. N.H. then testified that [Duncan] inserted his penis into her vagina, but that full penetration did not occur[, because Duncan ceased his attempt when he found out she was a virgin, and said he was going to let his son take her virginity]. N.H. testified that [Duncan] took her to the laundry room, pulled down her pants again, and told her to bend over. N.H. testified that she repeatedly said "no" as [Duncan] took his penis out again and used his hand on her back to make her bend over. N.H. testified that [Duncan] . . . attempted to insert his penis into her [anus]. [She] testified that, at this point, [Duncan] and [she] heard the front door open as N.H.'s younger sister[, S.C.,] had come to look for her.

Following N.H.'s testimony, . . . S.C. testified that she had gone to [Duncan's] house to see what N.H. was doing, as she hadn't returned home when she should have. S.C. testified that when she arrived at [Duncan's] house, she had knocked, waited a few minutes, and then entered the home when no one answered. S.C. further testified that when she entered the trailer, she saw [Duncan] and N.H. walking down the hallway[,] and that N.H. had a blank stare on her face. S.C. stated that she could tell something had happened or that something might have been said[,] and that [Duncan] was buttoning his pants as they walked down the hall.

The second victim in this case was S.G.[, who] testified that she was [fourteen] at the time of the sexual assault[,] and that the assault occurred in the living room of [Duncan's] trailer. S.G. testified that her father had dropped her off to hang out with J.D. (her boyfriend at the time). When she arrived, J.D. was outside mowing the grass. S.G. testified that J.D. told S.G. to go inside and wait for him to finish mowing the grass. S.G. testified that she waited on the couch[,] watching TV[,] and that [Duncan] was

in his room when she came into the trailer. S.G. testified that while she was waiting, [Duncan] came into the kitchen and asked her what she would do if he were to do things with her sexually. S.G. stated that her response to the question was pure shock, and she indicated . . ., "[M]ost of the time when he asked me, and I mostly just said I wouldn't want it to happen, and then he just walked away."

S.G. testified that [Duncan] . . . walk[ed] away from S.G. after asking this question, but a few minutes later[, he] walked back up to S.G. [She] stated that she was sitting with her feet up on the couch and her knees by her chest. [Duncan] walked up to her, spread her legs apart[,] and moved the bottoms of her two-piece outfit to the side. S.G. then testified . . ., "[H]e put his head down into where my vagina was and started eating me out." S.G. stated that [Duncan] was touching her vagina with his tongue and using his hands around her clitoris. She testified that the assault only stopped when J.D. walked back into the trailer. S.G then testified that [Duncan] got up quickly and went back to his room. S.G. testified that J.D. went to take a shower after mowing. While J.D. was showering, [Duncan] told S.G. that if she told anyone about what happened that he would kill her. Of important note, S.G. finally testified . . ., "[T]he reason I didn't tell anyone was because I didn't think anyone would believe me," after having to take a minute to regain her composure on the witness stand.

Following the [victims'] testimony, the Commonwealth called Ms. Amber Crawford-Wagman [("Ms. Crawford-Wagman")], a therapist and executive director of Turning Point Counseling and Advocacy Center, as an expert witness in the area of dynamics of sexual violence, victim responses to sexual violence, and the impact of sexual violence on victims during and after being assaulted. Ms. Crawford-Wagman testified regarding "counterintuitive behaviors" in sexual assault victims. Next, the Commonwealth called Clara Roberti [("Ms. Roberti")], a forensic interviewer with York County Children's Advocacy Center [("CAC")]. Ms. Roberti testified to CAC procedures and was a key witness in introducing the CAC interviews of both victims into evidence. Finally, the Commonwealth called Detective Stephen Lebo [("Detective Lebo")] of the Northern York County Regional Police Department. Detective Lebo testified regarding the investigation which occurred in this case that led to the filing of charges against [Duncan].

Following the Commonwealth's presentation of their case, counsel for [Duncan] called [Duncan's] wife, Rachel Duncan [("Ms. Duncan")], to testify regarding the home she shared with [Duncan], wherein the sexual assaults against the victims occurred. [Specifically, Duncan called Ms. Duncan to testify that they had only moved into the trailer where the assaults occurred in November 2017, which was subsequent to the first date after which the Commonwealth alleged Duncan assaulted his victims.] The Commonwealth objected to this testimony because, it argued, Duncan had failed to give notice for this essentially alibi testimony. The trial court sustained the Commonwealth's objection and struck Ms. Duncan's testimony on this point.] Next, [Duncan] called . . . J.D., to testify . . .. J.D. . . . testified to[, *inter alia*,] the parenting practices in [Duncan's] home, namely that J.D. was not allowed to have girls or girlfriends over without his mom being home and his chores being completed. Finally, [Duncan] called Marquis Smith [("Mr. Smith")], a live-in client of Ms. Duncan's. Mr. Smith testified regarding his living situation with the Duncans and his inability to get around without assistance. He testified that he lived in the living room of the [Duncans'] home.

[At the conclusion of] the trial in this matter, [Duncan] was found guilty by the jury of all charges against him . . .. Both a sentencing hearing and a sexually violent predator hearing were conducted on May 23, 2023. At that time, [Duncan] was determined to be a sexually violent predator, and th[e c]ourt sentenced him to 150-300 years [of] incarceration [consisting of several mandatory minimum sentences codified at 42 Pa.C.S.A. § 9718.2, imposed, in relevant part, consecutively for the following convictions: rape by forcible compulsion, statutory sexual assault, IDSI, two counts of aggravated indecent assault without consent, and IDSI – victim less than sixteen years old.] Thereafter, [Duncan], through his attorney, filed a post-sentence motion requesting a new trial or directed verdict, [in which he challenged the weight of the evidence and sought resentencing,] which th[e c]ourt denied. This timely appeal followed the denial of [Duncan's] post-sentence motion.

Trial Ct. Op., 11/17/23, at 2-6.

Duncan raises the following issues for our review:

1. Did the lower court abuse its discretion in denying [Duncan's] post-sentence motion for a new trial wherein [Duncan] clearly

demonstrated that the jury's verdict was against the weight of the evidence?

2. Did the lower court error as a matter of law by not allowing [Duncan] to introduce evidence concerning when his home was purchased?

3. Did the lower court abuse its discretion when sentencing [Duncan] to 150-300 years in prison when such a sentence is excessive, cruel, and unusual?

4. Did the lower court commit an error of law when sentencing [Duncan] to six (6) consecutive counts of twenty-five (25) years pursuant to 42 Pa.C.S.[A.] § 9718[.2], which was deemed invalid by th[e Superior] Court during the time period for which it is alleged that [Duncan] committed the crimes herein?

Duncan's Brief at 7 (unnecessary capitalization omitted).

In his first issue, Duncan argues the trial court erred in denying his motion for a new trial based on the verdict being against the weight of the evidence. Our standard of review for weight claims is as follows:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (citation omitted).

It is the exclusive province of the jury to weigh inconsistencies in a witness's testimony and to make credibility determinations. *See Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017). Indeed, this Court has explained that a new trial *should not be granted because of a mere conflict in the testimony*, or because a judge on the same facts would have arrived at a different conclusion. *See Juray*, 275 A.3d at 1047. Rather,

> [a] trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id*.

In sexual assault cases, if a jury credits a victim's testimony, then a lack of corroborating physical evidence does not undermine that testimony, because the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, notwithstanding contrary evidence presented by the defense. *See Commonwealth v. Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016). Further, in a sexual assault case, where there are a number of years between the events at issue and the trial, minor inconsistencies about the attendant circumstances of the assault do not rise to the level of shocking the conscience of the court where the victim has shown the "overarching ability to provide the salient facts relevant to what

she had experienced, namely a sexual assault at the hands of [the perpetrator] . . .." *Commonwealth v. Fuentes*, 272 A.3d 511, 519 (Pa. Super. 2022).

Duncan argues that various inconsistencies in N.H.'s and S.G.'s testimony make their testimony so incredible that the jury verdict was against the weight of the evidence, and the trial court consequently abused its discretion in concluding that the verdicts did not shock the conscience. *See* Duncan's Brief at 9-11. Duncan asserts N.H. testified inconsistently about details surrounding the assault, such as the street on which his trailer was located, whether his dog had been running around in the street prior to the assault, and the date of the assault. *See id*. at 9-10. Duncan also assails the credibility of S.C. who observed N.H. following the assault based on similar inconsistencies in details such as whether she waited a "couple" of minutes or ten to twenty minutes before coming into Duncan's trailer to check on N.H., and whether she observed Duncan's facial expression following the assault. *See id*. at 10. Duncan also argues that S.G. was incredible because her testimony about the placement of the furniture in his trailer contradicted the pictures offered at trial by the defense, her testimony that she was wearing a "two-piece" outfit contradicted information contained in the discovery that she had been wearing a one-piece romper, and her uncertainty about the date. *See id*. Additionally, Duncan maintains Detective Lebo testified equivocally about S.G.'s age when the assault occurred. *See id*. at 10-11.

The trial court considered Duncan's argument and concluded that it merits no relief. Specifically, the trial court reviewed the victims' testimony; noted the jury deliberated for approximately five hours and asked to review a video of N.H.'s CAC interview; thus, the jury "clearly found the testimony of the victims to be credible," and found Duncan guilty "after a careful review of the evidence and testimony." Order, 8/24/23, at 10-11.

Based on our review, we discern no abuse of discretion by the trial court. We note that while Duncan assails N.H.'s credibility based on her asserted inconsistencies or ambiguities about the dates and details surrounding the incident at trial, years after the assault, he has not demonstrated that N.H.'s account of the salient facts—namely, that he tried to penetrate her vagina while she was on the couch in his trailer and then placed his penis in the vicinity of her anus in the laundry room shortly thereafter—were incredible.[2] Similarly, S.G.'s inability to remember the exact year, her description of the furniture in his trailer that varied from the photos Duncan offered at trial, and her statement that Duncan only stopped assaulting her because J.D. opened the door—which Duncan argues is inconsistent with J.D.'s testimony that he did not observe the assault—do not pertain to the salient facts of her

_____

[2] Duncan notes that N.H. testified for the first time at trial that Duncan made a comment to N.H. during the assault that he, once he learned she was a virgin, said he was going to let his son take her virginity. *See* Duncan's Brief at 9 (discussing N.T., 12/12-14/22, at 167).

testimony, specifically, that Duncan subjected her to non-consensual vaginal oral sex and digital penetration.[3]  Duncan is due no relief.  **See Diaz**, 152 A.3d at 1047 (uncorroborated testimony by victim alone is enough to convict provided the fact-finder finds the victim credible); **Fuentes**, 272 A.3d 519 (minor inconsistencies do not render a conviction against the weight of the evidence where the victims are consistent about the salient facts of the assault); **Juray**, 275 A.3d at 1047 (conflicts in the evidence are for the fact-finder to resolve).

In his second issue, Duncan argues the trial court erred by striking the testimony of Ms. Duncan regarding when they purchased the trailer in which Duncan committed the instant offenses.  Our standard of review is an abuse of discretion by the trial court.  **See**, **e.g.**, **Commonwealth v. Zimmerman**, 571 A.2d 1062, 1067 (Pa. Super. 1990).

Pennsylvania Rule of Criminal Procedure 567(A) requires defendants to file a notice of alibi defense which "shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the

---

[3] Duncan argues that S.G. testified she was wearing a "two-piece" which conflicts with information in discovery that stated detectives examined a one-piece romper.  **See** Duncan's Brief at 10.  However, a fair reading of S.G.'s testimony is that while she used the word "two-piece," she described a romper, *i.e.*, a "grayish-bluish white" article of clothing that had "like a shirt and a bottom to it."  N.T., 12/12-14/22, at 213.  Additionally, our review of J.D.'s testimony shows that he did not expressly deny seeing an assault.  **See** *id*. at 338-48.

defendant intends to call in support of the claim." Pa.R.Crim.P. 567 (A)(2).

The rule also provides, in pertinent part:

> (1) If the defendant fails to file and serve the notice of alibi as required by this rule, the court may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

Pa.R.Crim.P. 567(B)(1).

This Court has explained that "[t]he right to present evidence of an alibi and to receive a jury instruction therefrom . . . is not absolute. In order to obtain this right, a defendant must comply with the notice requirement . . .." *Commonwealth v. Poindexter*, 646 A.2d 1211, 1218 (Pa. Super. 1994). The rule "clearly enables the trial court to take whatever action is within the interests of justice, when no notice is properly provided as to the alibi defense." *Id*. at 1221 (affirming denial of an alibi jury instruction following the defendant's failure to provide the required notice). Indeed, the trial court has "broad discretion in choosing an appropriate remedy[.]" *Commonwealth v. Servich*, 602 A.2d 1338, 1343 (Pa. Super. 1992) (internal citation omitted). Where there is an unjustified explanation for the failure to timely provide notice of an alibi, exclusion of the alibi testimony is appropriate. *See Commonwealth v. Fernandez*, 482 A.2d 567, 572 (Pa. Super. 1984).

Duncan argues the trial court erred in precluding Ms. Duncan's testimony about when they purchased the trailer in which the assaults occurred. Duncan does not contest the applicability of Rule 567, nor does he

dispute that he failed to give the requisite notice. Instead, he argues he did not know the dates on which the Commonwealth asserted the offenses occurred; therefore, he maintains, he did not know for when he would need an alibi; and, accordingly, he could not have filed a notice of alibi. *See generally* Duncan's Brief at 11-14.[4]

The trial court considered this issue and determined it warranted no relief. Specifically, Duncan offered testimony by Ms. Duncan that they had not moved into the trailer until November 2017, the relevance of which ostensibly was to show that the abuse could not have happened there until at least November 2017. *See* N.T., 12/12-14/22, at 307-308. The trial court noted the criminal information covered this time-period, and, accordingly, "[b]ecause [the] testimony contained a definite date within the period alleged

---

[4] While Duncan briefly asserts that presentation of this evidence "would have allowed the [d]efense to not only provide a clearer timeline of events, but also to discredit the witnesses' allegations of the same," Duncan's Brief at 14, which suggests use of this evidence was to impeach or undermine the credibility of the victim. However, the thrust of Duncan's argument focuses on alibi. This brief assertion occurs at the conclusion of his argument that is premised on this testimony as alibi evidence. Duncan maintains that had the Commonwealth presented him with a "firm non-shifting, time period" for the offenses, "a notice of alibi defense would have been . . . provided to the Commonwealth." *Id*. Duncan, however, fails to develop an argument that the evidence was admissible for any other purpose—and offered no other grounds below. Thus, any arguments for alternative grounds for admission of the evidence are waived. *See* Duncan's Brief at 11-14; N.T., 12/12-14/22, at 307-08; *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (concluding an undeveloped argument constitutes waiver, and stating that we "shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument").

in the information, . . . [Duncan] would have been aware of the need to file a pretrial Notice of Alibi Defense in this case." Order, 8/24/23, at 14.

Following our review, we conclude the trial court did not abuse its discretion in disallowing Ms. Duncan's testimony about the date on which she and Duncan moved into the trailer. We note the criminal information specified that Duncan committed sexual offenses against N.H. and S.G. between March 1, 2017 and April 21, 2020. **See** Information, 3/19/21. The Commonwealth thus put Duncan on notice that the charged offenses began to occur as early as March 1, 2017, and, therefore, he would know from the information alone about the relevance of Ms. Duncan's alibi testimony relating to the period of time from March 1, 2017 through November 2017. Because Duncan failed to file a notice of alibi, notwithstanding the fact that he was aware that his criminal conduct was asserted to begin prior to November 2017, he cannot show the trial court abused its discretion in striking Ms. Duncan's testimony on this specific issue. **See Poindexter**, 646 A.2d at 1218.[5]

_____

[5] Duncan cites, _inter alia_ **Commonwealth v. Devlin** 333 A.2d 888 (Pa. 1975) in support of his assertion that the Commonwealth should have fixed the date of the offenses with more specificity. **See** Duncan's Brief at 13-14. We find **Devlin** inapplicable in that the "sole issue . . . [was] whether the Commonwealth proved the date of the crime with sufficient particularity to uphold the conviction"; _i.e._, it was a sufficiency issue, rather than the evidentiary question at issue here, namely, whether the trial court erred in striking testimony for non-compliance with the notice of alibi requirement. 333 A.2d at 889. Moreover, **Devlin** concerned an apparently single act of sodomy that occurred on a completely unspecified day over a fourteen-month period; here, the criminal information alleged Duncan's conduct began in March 2017—Duncan's alibi, _i.e._, that he could not have been in the trailer
_(Footnote Continued Next Page)_

In his third issue, Duncan asserts the trial court imposed a cruel and unusual and excessive sentence. Duncan's assertion of cruel and unusual punishment relates to the legality of the sentence. *See Commonwealth v. Lankford*, 164 A.3d 1250, 1252 n.5 (Pa. Super. 2017).[6]

---

since he didn't live there, would have pertained to every date from March 2017 through November 2017, and all offenses committed therein. Thus, the notice of alibi would not have been a "futile gesture" in this case as it would have been in *Devlin*. *Cf*. *Commonwealth v. Benner*, 147 A.3d 915, 920-21 (Pa. Super. 2016) (distinguishing *Devlin* because in *Devlin*, there was a single instance of sexual assault, whereas in *Benner*, there was an ongoing pattern of sexual abuse). *Commonwealth v. Levy*, 23 A.2d 97 (Pa. Super. 1941) is likewise inapplicable because the issue there concerned the sufficiency of the evidence supporting convictions for sodomy, not the striking of alibi testimony for failure to give notice.

[6] While Duncan argues his sentence was excessive, it appears this assertion is meant to underscore the claim that his sentence was cruel and unusual, rather than raise a separate challenge to the discretionary aspects of sentencing. However, we note that if Duncan's argument were construed to be a challenge to the discretionary aspects of his sentence, based on excessiveness, as suggested by his statement of questions presented, *see Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa. Super. 2008) (excessiveness claims go to the discretionary aspects of sentencing), this argument is waived for Duncan's failure to include a Rule 2119(f) concise statement of reasons relied upon for allowance of appeal from the discretionary aspects of his sentence. *See Commonwealth v. Perzel*, 291 A.3d 38, 49 (Pa. Super. 2023), *appeal denied*, 301 A.3d 426 (Pa. 2023). Additionally, Duncan did not raise this issue in his post-sentence motion, *see generally* Post-Sentence Mot., 7/24/23, and, accordingly, it would be waived on that basis as well. *See id*. at 47.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. **See id**. at 1252.[7] However, the Eighth Amendment "does not require strict proportionality between the crime committed and the sentence imposed; rather, it forbids only extreme sentences that are **grossly disproportionate** to the crime." **Id**. (citation omitted; emphasis in original). When an appellant presents an Eighth Amendment challenge to his sentence, this Court applies the following analysis:

> In **Commonwealth v. Spells**, [] 612 A.2d 458, 462 (1992) (*en banc*), this Court applied the three-prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in **Solem v. Helm**, 463 U.S. 277 [] (1983):
>
> > [A] court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions.
>
> **Spells**, 612 A.2d at 462 . . ... However, this Court is not obligated to reach the second and third prongs of the **Spells** test unless a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. [**Id**.] at 463 . . ..

**Lankford**, 164 A.3d at 1252–53 (some internal citations and quotations omitted).

---

[7] Duncan does not raise a claim under the Pennsylvania Constitution, **see** Duncan's Brief at 14-15; however, the Pennsylvania Constitution's protections against cruel and unusual punishment are co-extensive with the federal constitution. **See Lankford**, 164 A.3d at 1252.

Here, our review of Duncan's argument reveals that he rests entirely on the first prong, *i.e.*, the gravity of the offenses and the harshness of the penalty. **See** Duncan's Brief at 14-15. Therefore—even if Duncan satisfies the threshold initial prong of the **Spells** test—because he fails to address the second and third prongs of the **Spells** test, he has not shown that his sentence is grossly disproportionate for the crimes he committed. Accordingly, this issue merits no relief.

In his fourth and final issue, Duncan argues the trial court imposed an illegal sentence. Our standard of review for challenges to the legality of a sentence is *de novo* and our scope of review plenary. **See Commonwealth v. Prince**, 320 A.3d 698, 700 (Pa. Super. 2024).

Here, the mandatory minimum sentences the trial court imposed are codified at 42 Pa.C.S.A. 9718.2, which provides, in relevant part:

**(a) Mandatory sentence.—**

(1) ***Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14*** (relating to sexual offenses and tier system) ***shall***, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, ***be sentenced to a minimum sentence of at least 25 years of total confinement***, notwithstanding any other provision of this title or other statute to the contrary. . . ..

42 Pa.C.S.A. § 9718.2(a)(1) (emphases added).

Duncan argues the trial court sentenced him pursuant to section 9718 which was ruled unconstitutional during the period of time in which he assaulted N.H. and S.G., and accordingly the trial court could not impose a mandatory minimum pursuant to that statute. *See* Duncan's Brief at 15-16 (discussing **Commonwealth v. Wolfe**, 140 A.3d 651 (Pa. 2016) (holding portions of section 9718 are unconstitutional)).

We note, initially, that Duncan's challenge is predicated solely upon the assertion that the trial court sentenced him pursuant to section 9718. Therefore, if the trial court did not sentence him pursuant to that section, Duncan's entire argument fails. Accordingly, we turn to this threshold question.

The trial court asserts that it sentenced Duncan to consecutive terms of twenty-five years of imprisonment pursuant to section 9718.2(a)(1), not section 9718. *See* Trial Ct. Op., 11/17/23, at 20-21.[8]

Even a cursory review of section 9718 substantiates the trial court's assertion as none of the mandatory minimums in section 9718 set forth a twenty-five-year mandatory sentence; accordingly, the trial court did not impose a mandatory minimum sentence pursuant to section 9718. *See* 42 Pa.C.S.A. § 9718(a) (setting forth applicable offenses and corresponding mandatory minimum terms of imprisonment). This shows the trial court's

---

[8] The Commonwealth likewise notes the trial court applied section 9718.2 rather than 9718. *See* Commonwealth's Brief at 25.

assertion that it sentenced Duncan pursuant to section 9718.2(a)(1) is sound. Therefore, the trial court imposed mandatory minimum sentences pursuant to section 9718.2(a)(1). Duncan does not contest the applicability of section 9718.2(a)(1), nor does he assert the illegality or unconstitutionality of section 9718.2(a)(1), which the trial court in fact applied.[9] Thus, Duncan's claim fails as he neglected has failed to advance an argument regarding the actual statutory section the trial court relied on to sentence Duncan; furthermore, this Court noted in **Commonwealth v. Golson**, 189 A3d 994, 1002 (Pa. Super. 2018), that **Wolfe** does not render section 9718.2 unconstitutional. Consequently, he is due no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2025

---

[9] Further, this Court has held that **Wolfe** does not render section 9718.2 unconstitutional. **See Commonwealth v. Golson**, 189 A.3d 994, 1002 (Pa. Super. 2018).